IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:14-CV-105-O-BJ |
| | § | |
| JOSEPH ZADEH, D.O., | § | |
| | § | |
| Respondent. | § | |

## BRIEF IN SUPPORT OF RESPONSE TO PETITION FOR ENFORCEMENT

JOSEPH ZADEH, D.O. ("Dr. Zadeh") hereby files this brief in support of his

"Response to Petition for Enforcement (Treating Petition as Motion for Summary

Judgment)" filed this same day.  The Response is supported by the following arguments

and the accompanying appendix.

1

# Contents

BRIEF IN SUPPORT OF RESPONSE TO PETITION FOR ENFORCEMENT ............. 1

I.    Summary of Argument ............................................................................. 1

II.   Background ............................................................................................. 2

III.   Legal Standards Applicable to a Motion for Summary Judgment ........................ 4

IV.   The Government's request to enforce production of documents is barred as a a matter of law. ............................................................................................. 5

    A.    Summary ............................................................................................. 5

    B.    Enforcement is barred by the Government's own authorities. ............................ 6

        1.    The Government has failed to produce any evidence showing that HIPAA is applicable to Dr. Zadeh or the records at issue. ........................................................ 6

        2.    Even assuming that § 164.512(f)(1)(ii)(C) is applicable, the Government has failed to produce competent evidence showing this regulation has been satisfied. ..... 7

    C.    Enforcement is barred by Texas law. ................................................................. 9

    D.    Enforcement is barred by the United States Constitution. ................................ 12

V.    Even under the most lenient standards for enforcement of administrative subpoenas, fact questions preclude summary judgment. ................................................................. 15

VI.   To the extent the Petition requests enforcement of the Subpoena's nondisclosure provision, the request must be denied. ............................................................................. 18

VII.   Conclusion ............................................................................................. 20

## <u>Table of Authorities</u>

# Cases

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, (1970)……………………………………5

*Alexander v. United States*, 509 U.S. 544 (1993) ………………………...………….19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) …………………………………5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)……………………………………….5

*Ferguson v. City of Charleston*, 532 U.S. 67 (2001). ………………………..…… 13

*Grimes v. Texas Dept. of Mental Health and Mental*
      *Retardation*, 102 F.3d 137 (5th Cir.1996)…………………………………………5

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) …………5

*New York Times Co. v. United States (Pentagon Papers)*,
      403 U.S. 713 (1971)..…………………………………………………………….19

*Oregon Prescription Drug Monitoring Program v. United States v. DEA*,
      No. 3:12–cv–02023–HA, 2014 WL 562938 (D. Or.
      February 11, 2014)..…………………………………………………….1, 13, 14

*Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186 (1945) …………………….12

*State Bank & Trust*, 473 F.2d 638 (5th Cir. 1973) ……………………………………...12

*R.A.V. v. St. Paul*, 505 U.S. 377 (1992) …………………………………………………16

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950).  …...…………………………16

*United States v. Playboy Entm't Group*, 529 U.S. 803 (2000) ……………………….19

*United States v. Powell,* 379 U.S. 48 (1964). ……………………….………………12, 15, 16

*Whalen v. Roe*, 429 U.S. 589 (1977). …………………………………………..………13

## Public Laws

Health Insurance Portability and Accountability Act of 1996,
      Public Law 104-191…………………………………………………………………1

## Statutes

21 U.S.C. § 876.………………………………………………………..……..2, 5

42 U.S.C.A. § 1320d-1……………………………………………..………………7

Texas Occupations Code 159.002………………………………..………………9, 10

Texas Occupations Code 159.003…………………………………..……………10, 11

Texas Occupations Code 159.004……………………………………...…………10, 11

## Regulations

45 C.F.R. §  160.102……………………………………………...……………………7

45 C.F.R. §  160.103………………………………………………..…………………7

45 C.F.R. §  164.104……………………………………………………..……………7

45 C.F.R. § 160.202………………………………………………..…………………10

45 C.F.R. § 160.203………………………………………………..…………………10

45 C.F.R. § 164.512 ……………………………..……………..…2, 5, 6, 7, 8, 9, 10, 11, 19

45 C.F.R. § 164.528  …………………………….……………………..……..2, 19

**Rules**
Fed. R. Civ. P. 3 …………………………………………..………………….…... 3
Fed. R. Civ. P. 56 ……………………………………….……..…….. ……..4
Fed. R. Civ. P. 81 …………………………………..…………….…………………3
Tex. R. Evid. 509. ………………………………………....……….…….…..9, 11

I.        **Summary of Argument**

This civil action presents a number of important issues of Constitutional and statutory interpretation that are matters of first impression, at least in the Fifth Circuit. Indeed, it appears that only one court (in any circuit) has addressed the Constitutionality of a DEA subpoena as applied to medical records, and that court found the subpoena to be unconstitutional. *See Oregon Prescription Drug Monitoring Program v. United States v. DEA*, No. 3:12–cv–02023–HA, 2014 WL 562938, *5 (D. Or. February 11, 2014). In this case, however, the barriers to enforcement are even stronger than in the Oregon case.

As shown below, the enforcement issues generally fall into two categories:

1.  Whether the Government is statutorily and constitutionally entitled to obtain the medical records of the sixty-seven patients identified in the Subpoena?

2.  If so, whether the Government can simultaneously prevent Dr. Zadeh from informing the sixty-seven patient of the Government's attempts to obtain their records, *i.e.* whether the DEA can unilaterally impose a "gag order" preventing Dr. Zadeh from disclosing "any information" regarding the Subpoena.

As to the first category, the Government is not entitled to enforcement, for multiple reasons. First, this action is barred as a matter of law, whether considered under: (1) HIPAA,[1] the Government's own authority, as discussed in section IV(B) below; (2) Texas statutory law, as discussed in section IV(C) below; or (3) the broader principles of the United States Constitution, as discussed in Section IV(D) below. In addition, even if the requested documents were not subject to statutory and constitutional protection, fact questions would prevent summary judgment, even under the most lenient standards that can be applied to enforcement proceeding, as discussed in section V below.

---

[1] "HIPAA" stands for Health Insurance Portability and Accountability Act of 1996, Public Law 104-191.

As to the second category of issues, the Subpoena includes a nondisclosure provision under the purported authority of a different HIPAA regulation. However, the Subpoena does not satisfy the requirements of this provision. More importantly, the provision constitutes a prior restraint on free speech, which is unenforceable under the First Amendment of the United States Constitution, as discussed in section VI below. Therefore, the Petition must be denied in its entirety.

## II.    Background

On or about November 25, 2013, the DEA issued an administrative subpoena (the "Subpoena") under the purported authority of 21 U.S.C. § 876, 45 C.F.R. § 164.512(f), and 45 C.F.R. § 164.528(a)(2). *See* App. Supp. Pet., Ex. 2 at 9 of 12.[2] The subpoena purported to be signed by DEA agent Ronald G. Robinson as "Acting RAC," and required Dr. Zadeh to produce records to "D/I Michelle Penfold" less than two weeks later. *See* App. Supp. Pet., Ex. 2 at 9 of 12. More specifically, the Subpoena required production of all "patient medical records" for *sixty-seven* patients, covering a period of fourteen months (from October 1, 2012 to December 25, 2013). *See* App. Supp. Pet., Ex. 2 at 9-12 of 12.

The subpoena broadly defined "patient medical records" to include "diagnosis, intake, prescriptions, laboratory work, referrals, copy of identification, insurance and method of payment." *See* App. Supp. Pet., Ex. 2 at 9 of 12. Acknowledging the fact that such information is subject to statutory prohibitions against disclosure in this context, as well as reasonable expectations of privacy in general, the Subpoena nevertheless asserted that disclosure was authorized by HIPAA regulations. More specifically, the Subpoena

---

[2] Because the pages of the Government's appendix are not consecutively numbered, the cited page numbers refer to the page numbers electronically stamped by the Court's ECF system at the top right of each page of the appendix (*e.g.* page 9 of 12).

stated that disclosure was required by 45 § C.F.R. 164.512(f). *See* App. Supp. Pet., Ex. 2 at 9 of 12. However, the Subpoena provided no factual allegations that would support disclosure, or even allow any meaningful evaluation, under that regulation. *See* App. Supp. Pet., Ex. 2. Instead, the Subpoena merely demanded compliance based on the conclusory *ipse dixit* of Acting RAC Robinson, who asserted that the regulation-required factors were met, without providing any factual basis. *See* App. Supp. Pet., Ex. 2 at 9 of 12.

Moreover, the Subpoena did not merely request protected information. Instead, it contained a "gag order" (for lack of a better term) that purported to prevent "[d]isclosure of any information concerning the subpoena." *See* App. Supp. Pet., Ex. 2 at 9 of 12. Once again, the Subpoena provided no factual basis for this assertion that disclosure of "any information" would impair a law enforcement investigation. *See* App. Supp. Pet., Ex. 2.

On February 13, the Government filed its Petition. The Government also filed a Memorandum and an Appendix in support. The Court subsequently referred the Petition (apparently treating it as a motion) to Magistrate Judge Cureton.

The Rules of Civil Procedure apply to adversary actions to enforce subpoenas, unless exempted. *See* Fed. R. Civ. P. 81. In this case, Dr. Zadeh is unaware of any order or statute that exempts this action from the Rules of Civil Procedure. As such, Dr. Zadeh construes the Petition as the "complaint" in this action. *See* Fed. R. Civ. P. 3 (stating that action is initiated by a complaint); 7(a) (listing available pleadings in civil actions). However, the Government contends that the Petition is actually a motion, even though it is not denominated as such. Moreover, in light of the order of reference, it appears the

3

Court entertains a similar construction.  Therefore, out of abundance of caution, Dr. Zadeh is responding to the Petition it two ways: (1) filing the instant "Response," which treats the petition as a "motion"; and (2) separately filing a motion to dismiss, which treats the Petition as a "complaint."

### III.      Legal Standards Applicable to a Motion for Summary Judgment

As noted above and in Dr. Zadeh's Response, the Government contends that the Petition is a motion, even though not denominated as such, and has filed a Memorandum and Appendix in support.  Further, counsel for the Government has agreed the Petition, treated as a motion, is subject to the Rule of Civil Procedure and Local Rules governing motion practice.[3]  *See* Fed. R. Civ. P. 81.  However, the Government's Memorandum does not discuss any legal standards under such rules.

If the Petition is considered  to be a motion, rather than merely complaint under Rule 7, then the Petition can only be considered a motion for summary judgment.  This is so because: (1) the Petition seeks to obtain the complete, permanent relief requested by the Government ; and (2) it does so based on affidavits, without hearing.  As such, if the Petition is a motion at all, it must be considered a motion for summary judgment that is subject to Rule 56 and the underlying principles of Due Process.

Under Rule 56, summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).  A genuine issue of material fact exists if the competent evidence "is such that a reasonable jury could return a verdict for the non-moving party."  *Id.* The movant must first inform the

---

[3] Conversely, some Rules of Civil Procedure, by their terms, have no application to enforcement proceedings.  *See* Fed. R. Civ. P. 26(f).

court of the basis of its motion and then identify competent evidence that shows there are no genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Unsubstantiated assertions are not competent summary judgment evidence.  *E.g., Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139 (5th Cir.1996).

If the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).   All of the evidence must be then viewed in a light most favorable to the party opposing summary judgment.  *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 158–59 (1970)).   If the record, with all facts and inferences taken in the non-movant's favor, could lead a rational trier of fact to find for the non-moving party, then summary judgment must be denied.  *See Matsushita*, 475 U.S. at 597.

**IV.    The Government's request to enforce production of documents is barred as a a matter of law.**

**A.    Summary**

Although 21 U.S.C. § 876 allows for issuance of administrative subpoenas by the Attorney General,[4] this statute does not provide the standards for whether subpoenas should be enforced in the face of challenges as to particular types of documents (such as

---

[4] Although there may be questions as to whether an "Acting RAC" can issue subpoenas under the Attorney General's authority, Dr. Zadeh assumes for the limited purposes of this motion that Ronald Robinson had such authority.

medical records).  Rather, such question must be determined by reference to other statutory or Constitutional provisions.

In this case, the Government contends that 45 C.F.R. § 164.512(f)(1)(ii)(C) allows enforcement, that such statute preempts more stringent provisions of Texas law, and that Texas law would allow enforcement in any event.  However, the Government is mistaken on all counts.  HIPAA does *not* preempt more stringent state laws protecting medical information, as discussed in section IV(C) below.  Moreover, if HIPAA did preempt state law and allow enforcement of the Subpoena in this instance, then its application would be unconstitutional under the Fourth Amendment, as discussed in section IV(D) below. Nevertheless, even if the Government's preemption arguments were correct, the Government has failed to produce any evidence showing that 45 C.F.R. § 164.512(f)(1)(ii)(C)  is applicable and has been satisfied.  Since this last argument is the simplest and most straightforward, Dr. Zadeh addresses it first, in section IV(B).

**B.      Enforcement is barred by the Government's own authorities.**

Even assuming for the sake of argument that 45 C.F.R. §164.512(f)(1)(ii)(C) would preempt Texas law, the Government has failed to demonstrate that HIPAA is applicable in this case or that the Government has complied with the requirements of this provision.  To the contrary, Dr. Zadeh could not have complied with the Subpoena without violating the very regulations upon which the Government relies.

**1.      The Government has failed to produce any evidence showing that HIPAA is applicable to Dr. Zadeh or the records at issue.**

As discussed in more detail in the following section, HIPAA is intended to *prevent* disclosure of various medical records, except in very limited circumstances. These limited circumstances are primarily found in 45 C.F.R. § 164.512, and the

6

Government relies specifically on § 164.512(f)(1)(ii)(C).  However, this provision applies only to "covered entities" under HIPAA, and the Government has wholly failed to produce evidence that would show  Dr. Zadeh is a "covered entity" under standards set forth in 42 U.S.C.A. § 1320d-1, 45 C.F.R. § 160.102(a), 45 C.F.R. § 160.103, and 45 C.F.R. § 164.104(a).  As such, § 164.512(f)(1)(ii)(C) cannot be a basis for disclosure.

> **2.      Even assuming that § 164.512(f)(1)(ii)(C) is applicable, the Government has failed to produce competent evidence showing this regulation has been satisfied.**

Second, even if applicable, § 164.512(f)(1)(ii)(C) does not provide any basis for requiring Dr. Zadeh to provide medical records.  Although 45 C.F.R. § 164.512(f)(1)(ii)(C) provides a limited exception that allows a Covered Entity to comply with administrative subpoenas and similar requests, the language of this regulation makes clear that the exception applies *only* if three conditions are all met:

> (1) The information sought is relevant and material to a legitimate law enforcement inquiry;

> (2) The request is specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought; and

> (3) De-identified information could not reasonably be used.

45 C.F.R. § 164.512(f)(1)(ii)(C).

Unless these three conditions are met, the Covered Entity *cannot* disclose patients' medical records in response to an administrative request.  There is no room for discretion on the matter.  The Covered Entity simply is not at liberty to comply with the administrative subpoena, whether the Covered Entity wishes to do so or not.

Moreover, the three conditions constitute purely objective standards.  Although numerous sections of HIPAA allow a Covered Entity to made decisions based on its belief or on representations of a third party, § 164.512(f)(1)(ii)(C) is not among them.

7

For instance, in § 164.512 alone, at least eight subsections turn on the existence of a

Covered Entity's belief, reasonable belief, good-faith belief, belief in the exercise of

professional judgment, or suspicion.  *See* 45 C.F.R. § 164.512(c)(1), (c)(1)(iii)(A),

(c)(2)(i), (c)(2)(ii), (f)(4), (f)(5), (f)(6)(ii), (j)(1)(ii)(A).  Similarly, at least twelve

subsections turn on the receipt of "represent[ations]," "credible representations,"

"satisfactory assurance[s]," or "statements" of determinations by third parties as to the

existence of certain factors.  *See* 45 C.F.R. § 164.512(c)(1)(iii)(B), (e)(1)(ii)(A),

(e)(1)(ii)(B), (e)(1)(iii), (e)(4), (i)(1)(ii), (i)(1)(iii)(A),  (i)(1)(iii)(C), (i)(2)(ii),

(i)((2)(ii)(A)(3), (i)(2)(iv), (j)(4).

     In contrast, § 164.512(f)(1)(ii)(C)—the section upon which the government

relies—does *not* allow a physician to make any disclosures based a belief or based on

assurances of others; rather, it requires satisfaction of three purely objective standards.

*See* 45 C.F.R. § 164.512(f)(1)(ii)(C).

     In this case, however, the Government has provided no information that would

allow Dr. Zadeh to believe the relevant factors have been met, much less evidence that

would objectively establish these factors.  The Subpoena contains no factual basis for

determining whether any of the conditions are met, much less all of them.  To the

contrary, the Subpoena relies on the *ipse dixit* of an "Acting RAC," who merely parrots

the language of the regulation at issue.  Moreover, the Government has refused to provide

Dr. Zadeh with any factual basis for the Subpoena, despite requests.  Thus, it has been

impossible to determine the scope of the investigation, whether the requested information

is relevant to it, whether the request is "specific and limited" when compared the

unidentified scope of the investigation, and whether and why de-identified information could not be used.  *See* 45 C.F.R. § 164.512(f)(1)(ii)(C).

Moreover, the filings in this case still provide no competent evidence, or even factual allegations, that would establish the three conditions are satisfied.   Instead, the Petition provides only unsupported, conclusory assertions that fail to qualify as competent evidence.  *See, e.g.,* App. Supp. Pet., Ex. 1   (making only conclusory statements as to each of the three factors).  As such, even under the Government's own authorities, the Government has failed to show that it is entitled to enforcement; to the contrary, enforcement is barred as a matter of law.

### C. Enforcement is barred by Texas law.

Even if the Government had produced competent evidence showing that § 164.512 is applicable and has been satisfied, enforcement of the Subpoena still would have to be denied based on more-restrictive privacy provisions under Texas law.  For instance, Texas Occupations Code 159.002 prevents disclosure of both patient communications and medical records.  *Cf. also* Tex. R. Evid. 509.  If Dr. Zadeh were to violate this provision, he would not only violate the confidences of his patients, but might be subject to liability under Texas law.  *See* Tex. Occ. Code  § 159.009.

In recognition of this fact, the Government makes a twofold argument in an attempt to avoid the requirements of state law: (1) that § 164.512 preempts state law, under the "Supremacy Clause" of the United States Constitution; and (2) that state law does not conflict with § 164.512, since Texas Occupations Code 159.004 allows disclosure to "a governmental agency, if the disclosure is required or authorized by law." However, these arguments fail for multiple reasons.

Under HIPAA, the Department of Health and Human Services adopted regulations in *Standards for Privacy of Individually Identifiable Health Information* (commonly called the "Privacy Rule"), which have been codified (as amended) in 45 C.F.R., chapters 160-164.   These regulations expressly provide a floor for patient privacy standards, while allowing more restrictive standards if provided for by the states.   In other words, the regulations provide for broad preemption of contrary state laws in general, but they also confirm (as does HIPAA itself) that they do *not* preempt more restrictive standards set by the states.   *See* 45 C.F.R. § 160.203.   More specifically, 45 C.F.R. § 160.203(a) provides that HIPAA does *not* preempt any "provision of State law [that] relates to the privacy of individually identifiable health information and is more stringent than a standard, requirement, or implementation specification adopted under subpart E of part 164 of this subchapter."   In turn, a standard is "more stringent" if it "provides greater privacy protection for the individual who is the subject of the individually identifiable health information" than the standard set forth in the rules and regulations. 45 C.F.R. § 160.202(6).

Texas law contains a number of exceptions to the general rules of nondisclosure, but it contains no exception for administrative subpoenas.   In other words, Texas law is both contrary to and more stringent than § 164.512(f)(1)(ii)(C).   As such, HIPAA does not preempt section Texas law.

The Government attempts to avoid this result by relying on Occupations Code section 159.004(a), However, this section does not provide any independent basis for disclosure.   Rather, it applies only if the Government can both identify another law requiring disclosure and demonstrate that it has satisfied such law.   In this case, the

Government asserts that § 164.512 is such a law.  However, as previously discussed in

section IV(B), the Government has failed to produce evidence that would demonstrate

that § 164.512 is applicable or evidence that would justify enforcement of the Subpoena

under § 164.512.  Accordingly, Dr. Zadeh is not allowed to produce the requested

documents without violating the provisions of Texas law.

Furthermore, the Government's argument fails for another reason, as section

159.004 is not the applicable section of the Texas Occupations Code.  To the contrary,

the applicable provision would be section 159.003, which governs administrative

proceedings.  Admittedly, the introductory language of section 159.003 might be

construed as applying only to court or administrative "actions," *i.e.*, applying only *after*

an action is filed with a court or administrative tribunal.  However, the subsections make

clear that the meaning of "proceedings" in section 159.003 is broad enough to include

pre-filing "investigations."  Tex. Occ. Code § 159.003(a)(5), (a)(6), (b).  For instance,

section 159.003(b) contains an overriding prohibition against any disclosure that might be

used "to investigate or substantiate criminal charges against a patient."[5]

In this case, the DEA's investigation constitutes an "administrative proceeding"

for the purposes of the Texas Occupation Code, and section 159.003 is therefore

applicable rather than section 159.004.  Yet section 159.003 does not contain any

provision allowing disclosure based on an administrative proceeding or any catch-all

provision for disclosure based on other laws.  *See* Tex. Occ. Code 159.003; *cf. also* Tex.

R. Evid. 509(e).  As such, Texas law is more stringent than HIPAA regulations on this

_____

[5] Although not necessary to resolution of this action, this provision was particularly troubling to Dr. Zadeh,
since it appears that the DEA's administrative investigation of Dr. Zadeh is made in the hope of finding
evidence of criminal wrongdoing against his patients.  If this were not the case, then there could be no
conceivable basis for the Government's assertion that "[d]isclosure of any information concerning this
subpoena would impede a federal law enforcement investigation."

11

issue, and it is not preempted by HIPAA.  Therefore, regardless of any other issue, the

Government has failed to show it is entitled to enforcement despite the provisions of

Texas law.

> **D.      Enforcement is barred by the United States Constitution.**

Finally, even assuming that federal or state law statutory law authorized

enforcement of the Subpoena in this case, enforcement would still be barred by the

Fourth Amendment prohibition against unreasonable searches, which applies to

administrative subpoenas.

Even when the Fourth amendment is not at issue, or when there is a reduced

expectation of privacy under the Fourth Amendment (for instance, as to corporations), a

Court is required to ensure that the administrative agency has not acted arbitrarily or

outside its statutory authority.  *See*, *e.g.*, *Oklahoma Press Publishing Co. v. Walling*, 327

U.S. 186, 216 (1945).  If this were not the case, then "the enforcement proceeding

[would] become an empty form; and the court, a rubber stamp."  *United States v. Security*

*State Bank & Trust*, 473 F.2d 638, 641 (5th Cir. 1973).  Therefore, even when the Fourth

Amendment has not been at issue, the Supreme Court has held that enforcement of IRS

subpoenas requires that: (1) the investigation is conducted pursuant to a legitimate

purpose, (2) the information requested under the subpoena is relevant to that purpose, (3)

the agency does not already have the information it is seeking with the subpoena, and (4)

the agency has followed the necessary administrative steps in issuing the subpoena.

*United States v. Powell,* 379 U.S. 48, 57-58 (1964).  Similarly, when dealing with a

lessened expectation of privacy (as to corporations instead of individuals, for instance),

the Supreme Court has required that: (1) the subpoena is within the statutory authority of

the agency; (2) the information sought is reasonably relevant to the inquiry; and (3) the

demand is not unreasonably broad or burdensome.  *See United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950).  Collectively, these standards represent the *minimum* requirements for enforcement of a subpoena.

However, the constitutional requirements are heightened when greater privacy interests are at issue, and medical records fall at the high end of the privacy scale. Medical records have long been treated as confidential.  As the Oregon District Court recently noted, the "Hippocratic Oath has contained provisions requiring physicians to maintain patient confidentiality since the Fourth Century B.C.E.," and "a number of signers of the Declaration of Independence and delegates to the Constitutional Convention were physicians trained at the University of Edinburgh, which required its graduates to sign an oath swearing to preserve patient confidentiality." *See Oregon Prescription Drug Monitoring Program v. United States v. DEA*, No. 3:12–cv–02023– HA, 2014 WL 562938, *5 (D. Or. February 11, 2014).  Moreover, the United States Supreme Court has recognized a protected privacy interest in medical records for almost forty years. *See Whalen v. Roe*, 429 U.S. 589 (1977). Although the *Whalen* decision did not include a holding under the Fourth Amendment, it is nevertheless instructive, noting that there are two types of privacy interests implicated by medical records: "One is the individual interest in avoiding disclosure of personal matters and another is the interest in independence in making certain kinds of important decisions."   *Id.* at 599–600 (citation omitted).  Finally, the Supreme Court removed any doubt on the issue by explicitly recognizing that medical records are protected in *Ferguson v. City of Charleston*, 532 U.S. 67 (2001).  More specifically, it held that a "reasonable expectation of privacy enjoyed by the typical patient undergoing diagnostic tests in a hospital is that the results

of those tests will not be shared with nonmedical personnel without her consent." *Id,* at

78. The Court found that "an intrusion on that expectation of privacy may have adverse

consequences because it may deter patients from receiving needed medical care." *Id*. at

78 n. 14 (citing *Whalen*, 429 U.S. at 599–600). Application of the Court's decision is

even stronger in this context that in the hospital context, since "all provision of medical

services in private physicians' offices carries with it a high expectation of privacy." *See*

*Oregon Prescription Drug Monitoring Program*, 2014 WL 562938 at *7.

Given the reasonable expectations of privacy by Dr. Zadeh and his patients, the

Court must apply more than the usual level of scrutiny. Indeed, Dr. Zadeh contends that

the Subpoena should be subject to the probable cause standard under the circumstances of

this case.[6] Although the Court is not at liberty to apply a probable-cause standard under

the existing state of the law, the Fourth Amendment's reasonable standard nevertheless

requires a meaningful balancing of the privacy interests in the medical records with the

Government's genuine need to obtain the specific information requested. To date, Dr.

Zadeh is aware of only one decision that has addressed the applicability of DEA

subpoenas to medical records. In that case, the Oregon District Court determined that the

"DEA's use of administrative subpoenas to obtain prescription records from the

[Prescription Drug Monitoring Program] violates the Fourth Amendment." *See Oregon*

*Prescription Drug Monitoring Program*, 2014 WL 562938 at *5-8. The Court's

reasoning is equally applicable to this case. Indeed, the reasoning is even stronger in this

case, as this Subpoena is not limited to prescription records. Instead, the DEA seeks *all*

medical records, including "diagnosis, intake, prescriptions, laboratory work, referrals,

---

[6] Dr. Zadeh concedes that the Court cannot accept such an argument under the existing state for the law. However, Dr. Zadeh makes the contention for the purpose of preserving the issue for potential writ of certiorari.

14

copy of identification, insurance and method of payment."  App. Supp. Pet., Ex. 2 at 9 of

12.  It is difficult to think of a more intrusive request for private information than the

Subpoena in this case, and such a request cannot be justified based on the scanty

assertions in the Subpoena and in the Government's filings in this case.

      In order to decide this motion, the Court need not decide whether the DEA could

never subpoena medical records consistent with the Fourth Amendment.  Rather, the

question is only whether this Subpoena is enforceable.  Given the breadth of documents

requested and the absence of factual allegations and evidence supporting the need for

such information, the answer must be "no."  Whatever else the Fourth Amendment

protects against, it must protect against such a broad request for private information that

is based solely on the conclusory *ipse dixit* of government agents. Therefore, even if the

Subpoena is authorized by federal or statute, its enforcement still would have to be

denied based on the Fourth Amendment.

**V.  Even under the most lenient standards for enforcement of administrative subpoenas, fact questions preclude summary judgment.**

      Even if enforcement were not barred for the reasons discussed above,

enforcement would still have to be denied based on the current record.  As noted above,

even where there is a reduced expectation of privacy or even where the Fourth

Amendment has not been at issue, the Supreme Court has nevertheless imposed threshold

requirements for enforcement of administrative subpoenas.  *See, e.g., United States v.*

*Powell,* 379 U.S. 48, 57-58 (1964)  (requiring that (1) the investigation is conducted

pursuant to a legitimate purpose, (2) the information requested under the subpoena is

relevant to that purpose, (3) the agency does not already have the information it is

seeking, and (4) the agency has followed the necessary administrative steps); *United*

*States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)  (requiring that: (1) the subpoena is within the statutory authority of the agency; (2) the information sought is reasonably relevant to the inquiry; and (3) the demand is not unreasonably broad or burdensome)  Moreover, a court may not enforce a subpoena that has been issued for an improper purpose, such as for harassment or "for any other purpose reflecting on the good faith of the particular investigation." *See* Powell, 379 U.S. at 58.

As discussed above, the Government's supporting evidence consists of conclusory assertions that fail to constitute competent evidence on the bulk of the required factors. For instance, the Government describes its investigation in vague, virtually-meaningless terms that wholly fail to demonstrate the Subpoena is really made for a legitimate purpose and that it is not unreasonably broad when compared to the investigation's actual purpose.  *See, e.g., Powell,* 379 U.S. at 57-58; *Morton Salt Co.*, 338 U.S. at 652. However, *even if* the Government's evidence could be credited, Dr. Zadeh's accompanying evidence creates fact questions on issues such as: (1) whether the Government already has some or all of the information requested; (2) whether this "particular investigation" is undertaken in good faith.  *See, e.g., Powell,* 379 U.S. at 57-58; *Morton Salt Co.*, 338 U.S. at 652.

As shown by the accompanying affidavit, DI Penfold and another DEA Agent have already conducted an unconstitutional search of Dr. Zadeh's records by means of fraudulent nondisclosure.  *See* App. Supp. Resp., Ex. A at 2-3.  More specifically, four people appeared at Dr. Zadeh's office on October 22, 2013, and presented his staff with a Medical Board Subpoena.  *See* App. Supp. Resp., Ex. A at 2, Ex. A-1 at 5.  When asked for their identities, the Board representative, Ms. Pease stated they were with the Texas

16

State Medical Board.  *See* App. Supp. Resp., Ex. A at 2.  Despite knowing that a reasonable person would understand that statement as indicating that all four of the individuals were with the Medical Board, the two DEA agents kept silent.  *See* App. Supp. Resp., Ex. A at 2.  The DEA Agents then proceeded to join the Board representatives in reviewing Dr. Zadeh's patient files—without having any of the patients' personal information redacted—and making copies of those records.  *See* App. Supp. Resp., Ex. A at 2-3.  At the very least, the evidence indicates that the DEA Agents reviewed the files of the patients identified in the subpoena, some of which are at issue on the DEA Subpoena as well.  *See* App. Supp. Resp., Ex. A at 3.  Throughout the process, the DEA agents made no attempt to identify themselves until being specifically asked for identification.  *See* App. Supp. Resp., Ex. A at 3.   In other words, the DEA Agents conducted an unconstitutional search by deception.

The foregoing evidence demonstrates that the Government already has at least a portion of the information it now seeks.  At the very least, it has the information from the patients that were included in the Medical Board subpoena.  Moreover, the actions of the DEA Agents and Board representatives are sufficient to create an inference that the Board representatives may have unlawfully shared information about other patients, which have been separately disclosed to the Board.  Furthermore, the actions of the DEA agents—such as failing to correct the misrepresentation that they were with the Medical Board, as well as their repeatedly closing the door to conceal their activities—are not those of Government servants conducting a legitimate investigation in good faith.  Rather, they indicate that this "particular investigation" may be made for an improper purpose.

More to the point, the evidence is *at least* sufficient to raise a number of fact questions concerning:  whether the Government already has some or all of the information requested; whether this "particular investigation" is not being conducted in good faith; whether the government's real purpose is legitimate;  and whether the requested information is overly broad in relation to that true purpose.  Therefore, if enforcement is not denied outright, for the reasons discussed in previous sections, then the Petition still cannot be enforced by summary judgment without opportunity for discovery on these issues.

## VI.   To the extent the Petition requests enforcement of the Subpoena's nondisclosure provision, the request must be denied.

Finally, whether or not the production-of-documents aspect of the Subpoena could be enforced, the nondisclosure aspect cannot.  The subpoena's nondisclosure provision states:

> NONDISCLOSURE: Disclosure of any information concerning this subpoena would impede a federal law enforcement investigation. Pursuant to 45 C.F.R. § 164.528(a)(2), you must suspend notice to any individual whose protected health information is disclosed in response to this subpoena for a period of one year from today's date.

*See* App. Supp. Pet., Ex. 2 at 9.  Based on the last sentence, this provision could be read as being limited only to the suspension of the "accounting of disclosures" required by 45 C.F.R. § 164.528(a)(2).  However, the broader language appears to prohibit "[d]isclosure of *any information* concerning this subpoena,"[7] perhaps under threat of prosecution for obstruction of justice.  *See* App. Supp. Pet., Ex. 2 at 9 of 12 (emphasis added).  To the extent that the Government seeks to prevent any notice of the Subpoena or this

---

[7] Of course, it is highly questionable whether this statement was even made in good faith, since the Petition contains no factual allegations that would support such statement, and since the Government has now placed the names all sixty-seven in the public record of this action.

proceeding from being provided to the sixty-seven patients, the Petition fails to state a claim upon which relief can be granted.

First, the only basis for the nondisclosure provision is another regulation under HIPAA—45 C.F.R. § 164.528(a)(2)—which in turn incorporates and relies on satisfaction of § 164.512. However, for the reasons discussed in section IV(B) above, the Government has failed to show that HIPAA is even applicable or to show that the requirements of § 164.512 have been met. Therefore, § 164.528(a)(2) can provide no basis for the nondisclosure requirement in this case.

Moreover, if the nondisclosure requirement were authorized by statute, it would be unconstitutional under the First Amendment of the United States Constitution. The prohibition against any disclosure is a classic prior restraint on speech. *See, e.g.*, *Alexander v. United States*, 509 U.S. 544, 550 (1993) (noting that a "prior restraint" includes "administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur"). As such, the provision could only be saved if disclosure of the information would "surely result in direct, immediate, and irreparable damage to our Nation or its people." *New York Times Co. v. United States (Pentagon Papers)*, 403 U.S. 713, 730 (1971) (Stewart, J., joined by White, J. concurring). Moreover, even if not rising to the level of a classic prior restraint, the nondisclosure provision would still be content-based restriction on speech, because it targets a specific category of speech—*i.e.,* speech regarding the Subpoena. As a content-based restriction, the nondisclosure provision is "presumptively invalid," *R.A.V. v. St. Paul*, 505 U.S. 377, 382 (1992), and could only be sustained if it were "narrowly tailored

19

to promote a compelling Government interest." *United States v. Playboy Entm't Group*, 529 U.S. 803, 813 (2000) (citation omitted).

Fairly obviously, the Government has not met either standard.  The Government has provided no evidence, or even factual allegations, that would support the nondisclosure provision. Perhaps more importantly, the Government itself has placed the Subpoena (including the names of all sixty-seven patients) into the public record, which belies the assertion that disclosure of "any information" would impede a federal law enforcement investigation.  Therefore, regardless of any other issues in this action, any attempt to enforce the Subpoena's "gag order" must be denied, and the judgment in this action should specify that Dr. Zadeh has no obligations under the nondisclosure provision.

**VII.    Conclusion**

For the reasons discussed, this Court should deny the Petition for enforcement and dismiss this action as a matter of law.

Respectfully submitted,

/s/ William D. Taylor
Law Office of Francisco Hernandez Jr
800 W Weatherford
Fort Worth, TX 76102
817/335-2331
Fax: 817/882-8444 FAX
Email: francisco@texasmexicolaw.com

William D. Taylor (TX 24046954)
Taylor & Taylor Law, P.C.
4115 Highgrove Dr.
Arlington, TX 76001
817.483.8388
Fax: 817.483.8390
Email: wtaylor@taylorandtaylorlaw.com

20

## **CERTIFICATE OF SERVICE**

On April 24, 2014, the foregoing document will be served on all counsel of record via the Court's ECF system.

/s/ William D. Taylor